UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

LARRY CALDWELL,

        Plaintiff,

   v.

ROSEVILLE JOINT UNION HIGH
SCHOOL DISTRICT; JAMES JOINER
and R. JAN PINNEY, in their
official capacities as members
of the Board of Education;
TONY MONETTI in his official
capacity as Assistant
Superintendent for Curriculum
and Instruction, DONALD
GENASCI in his official
capacity Deputy Superintendent
for Personnel and Chief
Compliance Officer; RONALD
SEVERSON in his official
capacity Principal of Granite
Bay High School; and Does 1
through 10.

        Defendants.
_____/

NO. CIV. S-05-0061 FCD JFM

MEMORANDUM AND ORDER

----oo0oo----

This matter is before the court on defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 8(a), and 10(a).  For the reasons set forth below,[1] defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND[2]

From June 3, 2003 through June 1, 2004, Larry Caldwell ("plaintiff") sought to introduce new material into the science program in defendant Roseville Joint Union High School District ("District").  (Pl.s' Third Am. Compl. ("TAC"), filed July 29, 2005, ¶ 14).  Teachers from the district teach Darwin's theory of evolution in biology classes.  (Id.)  Plaintiff sought to have the District adopt his Quality Science Education Policy ("QSEP"), which presents some of the scientific weaknesses of evolution along with the scientific strengths.  (Id.)  In seeking to persuade public officials of the district to adopt the QSEP, plaintiff engaged in three distinct public processes.  (Id. ¶ 16).  Specifically, plaintiff sought 1) to list the QSEP as an agenda item on school board meetings, 2) to participate on the curriculum instruction team, and 3) to participate in the district's "instructional materials challenge" procedure.  (Id. ¶¶ 6, 10, 12).  Plaintiff alleges the following in support of his claims.

/////

/////

---

[1]     Because oral argument will not be of material assistance, the court orders the matter submitted on the briefs. E.D. Cal. Local Rule 78-230 (h).

[2]     The factual background of this case is taken from plaintiff's complaint.

**A.    School Board Meetings**

Plaintiff sought to place items on the school board agenda and have the board vote on his QSEP policy.  (See id. ¶¶ 6-10). The School Board regularly holds meetings open to the public. (Id. ¶ 17).  Plaintiff requested that the QSEP be placed on the agenda of a regular school board meeting for public debate and potential adoption.  (Id.)  The school board listed the topic of "supplemental materials" instead.  (Id. ¶ 18).  Plaintiff questioned R. Jan Pinney ("Pinney"), a member of the Board of Trustees, about the omission of the QSEP from the board's agenda. (Id.)  Pinney told plaintiff that the omission was intentional and instructed plaintiff that he would need to obtain approval from each high school council before he would be permitted to place the QSEP on the school board's agenda.  (Id.)

Despite Pinney's instruction, plaintiff proceeded to seek adoption of his QSEP proposal through the school board, but the school board refused to list the QSEP on the board's agenda. (Id. ¶ 27).  In total, the board denied plaintiff's request to place the QSEP on the meeting agenda on 12 occasions.  (Id.) On April 19, 2004, plaintiff threatened legal action if the district continued to refuse to place the QSEP on the board's agenda.  (Id. ¶ 24).  In response, Superintendent Tony Monetti ("Monetti") agreed to place the QSEP on the board's agenda on May 4, 2004  (Id. ¶¶ 24-25).  The board entertained discussion from the public regarding the QSEP and was prepared to vote on its adoption.  (Id. ¶ 25).  According to plaintiff, Monetti then "asserted a bogus procedural objection" that prevented the board from voting to adopt the QSEP.  (Id.)  Plaintiff requested to

3

discuss the QSEP again at a later meeting.  The board denied his

request.  (Id.)  Plaintiff alleges that defendants' refusal to

place the QSEP on the board agenda and the deprivation of a board

vote was motivated by an intent to discriminate against Caldwell

and other citizens on the basis of their viewpoint and/or their

religious beliefs and affiliations.  (Id. ¶ 28).

**B.   Curriculum Instruction Team**

Plaintiff also sought to express his views by participating

in the Curriculum Instruction Team ("CIT") of his daughter's high

school, Granite Bay High School ("GBHS").  (Id. ¶ 29).  The CIT

is a parent advisory council with the purpose of informing and

involving parents in the development of programs at GBHS.  (Id. ¶

33).  A newsletter addressed to parents of students of GBHS

invited participation and presented a potential topic: "How is

evolution taught in our school? . . . If you have questions like

these about curriculum and instruction issues at GBHS, the

Curriculum and Instruction team is the place for you."  (Id.)

Plaintiff viewed the CIT as a potential avenue to address

his ideas about the QSEP and asked the school principal, Ronald

Severson ("Severson") whether it would be a proper forum.  (Id. ¶

34).  Severson responded that he would prefer to meet and discuss

these issues with plaintiff individually rather than at the CIT

meeting.  He also informed plaintiff that he did not support the

QSEP.  (Id.)

The agenda for the CIT meeting on December 3, 2003, included

a topic regarding updating the science curriculum and referred to

the QSEP. (Id. ¶ 35).  Plaintiff and others supporting

plaintiff's views attended the CIT meeting, but Severson told

4

1  them that they would not be permitted to discuss the QSEP.

2  Severson removed the item from the agenda.  (Id.)  Plaintiff was

3  not allowed to discuss the QSEP at any later CIT meetings that

4  year.  (Id.)  Plaintiff believes that defendants' refusal to

5  permit him to discuss the QSEP at CIT meetings was motivated by

6  hostility toward plaintiff's actual and perceived religious

7  beliefs.  (Id. ¶ 36).

8  **C.   Instructional Materials Challenge**

9       Additionally, plaintiff sought to challenge the use of the

10  Holt Biology Textbook in the district.  (Id. ¶ 38).  The district

11  has an "instructional materials challenge" procedure for parents

12  and others to object to the use of a particular textbook.  (Id.)

13  The challenge provides four levels of review: individual teachers

14  (Level One), school principals (Level Two), Assistant

15  Superintendent of Curriculum Instruction (Level Three), and

16  Superintendent (Level Four).  (Id.)

17       In September 2003, plaintiff challenged the Holt Biology

18  Textbook on the grounds that its coverage of evolution was not

19  "accurate, objective, and current" as required by the California

20  Education Code.  (Id. ¶ 39).  Plaintiff's proposed solution was

21  to supplement the current text with the QSEP materials.  (Id.)

22  Because all teachers in the district used the textbook, the

23  District and plaintiff agreed that the Level One challenge could

24  be satisfied through a consolidated challenge as opposed to

25  meeting each teacher individually.  (Id.)  Plaintiff also

26  believed that this meeting would satisfy the second level of

27  review.  (Id.)  Most of the district's science teachers attended

28  the meeting, and plaintiff believes that principals and

1  administrators were also in attendance.  (Id.)  On December 15,

2  2003, nineteen science teachers rejected plaintiff's challenge.

3  (Id.)  Plaintiff is unclear whether he was accorded a level two

4  review and alleges that he was not afforded a level three or

5  level four review.  (Id. ¶¶ 43-45).  Plaintiff believes that the

6  district's failure to comply with its own instructional materials

7  challenge was based on both "religious animus" and viewpoint

8  discrimination.  (Id. ¶ 46).

9  **D.   Procedural History**

10      Plaintiff filed administrative complaints to the district on

11  behalf of himself and others.  (Id. ¶ 47).  Genasci had the legal

12  authority to respond to plaintiff's allegations and denied each

13  of the administrative complaints.  (Id.)  Plaintiff alleges he

14  has exhausted his administrative remedies.  (Id. ¶ 51).

15      Plaintiff filed this action in federal court on January 11,

16  2005.  He amended the complaint once as of right on January 18,

17  2005.  He then sought leave to amend to file a second amended

18  complaint ("SAC").  The court granted plaintiff leave and the SAC

19  was filed on March 10, 2005.  Defendants filed a motion to

20  dismiss the SAC for lack of subject matter jurisdiction and for

21  failure to state a short plain statement of relief as required

22  under Rule 8(a).  On June 30, 2005, the court issued an order

23  dismissing the SAC under Rule 8(a) and directing plaintiff to

24  file an amended complaint within thirty days.  The court vacated

25  defendants' motion to dismiss as moot.  On July 29, 2005,

26  plaintiff filed the third amended complaint ("TAC").

27      Plaintiff's TAC alleges the following claims: 1) violation

28  of civil rights under 42 U.S.C. § 1983; 2) violations of state

1  constitutional laws; and 3) waste of tax dollars under California

2  Code of Civil Procedure section 526(a).   Plaintiff seeks

3  declaratory and injunctive relief, nominal damages, and

4  attorney's fees and costs.   (Pl's. Prayers for Relief ¶¶ 1-24).

5  **STANDARD**

6  **A.   Subject Matter Jurisdiction**

7  _____Under Rule 12(b)(1), a party may by motion raise the defense

8  that the court lacks "jurisdiction over the subject matter" of a

9  claim.   Fed. R. Civ. P. 12(b)(1).   It is well established that

10  the party seeking to invoke the jurisdiction of the federal court

11  bears the burden of establishing the court's subject matter

12  jurisdiction.   Stock West, Inc. v. Confederated Tribes, 873 F.2d

13  1221, 1225 (9th Cir. 1989).   The Eleventh Amendment limits the

14  subject matter jurisdiction of the federal courts.   See Seminole

15  Tribe of Florida v. Florida, 517 U.S. 44, 53-54 (1996).

16  A motion to dismiss for lack of subject matter jurisdiction

17  may attack the allegations of jurisdiction contained in the

18  complaint as insufficient on their face to demonstrate the

19  existence of jurisdiction ("facial attack").   Thornhill

20  Publishing Co. v. General Tel. & Elec. Corp., 594 F.2d 730, 733

21  (9th Cir. 1979).   If the motion constitutes a facial attack, the

22  court must consider the factual allegations of the complaint to

23  be true.   Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir.

24  1981).

25  **B.   Motion to Dismiss**

26  _____On a motion to dismiss, the allegations of the complaint

27  must be accepted as true.   Cruz v. Beto, 405 U.S. 319, 322

28  (1972).   The court is bound to give plaintiff the benefit of

7

1 every reasonable inference to be drawn from the "well-pleaded"

2 allegations of the complaint. <u>Retail Clerks Int'l Ass'n v.</u>

3 <u>Schermerhorn</u>, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff

4 need not necessarily plead a particular fact if that fact is a

5 reasonable inference from facts properly alleged.  <u>See</u> <u>id.</u>

6     Given that the complaint is construed favorably to the

7 pleader, the court may not dismiss the complaint for failure to

8 state a claim unless it appears beyond a doubt that the plaintiff

9 can prove no set of facts in support of the claim which would

10 entitle him or her to relief.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45

11 (1957); <u>NL Industries, Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th

12 Cir. 1986).

13     Nevertheless, it is inappropriate to assume that plaintiff

14 "can prove facts which it has not alleged or that the defendants

15 have violated the . . . laws in ways that have not been alleged."

16 <u>Associated Gen. Contractors of Calif., Inc. v. Calif. State</u>

17 <u>Council of Carpenters</u>, 459 U.S. 519, 526 (1983).  Moreover, the

18 court "need not assume the truth of legal conclusions cast in the

19 form of factual allegations." <u>United States ex rel. Chunie v.</u>

20 <u>Ringrose</u>, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

21 **C.   Rule 8(a)**

22     Rule 8(a) requires that a pleading provide "a short and

23 plain statement of the claim showing that the pleader is entitled

24 to relief." Fed. R. Civ. P. 8(a).  The pleading must give the

25 defendant fair notice of what the plaintiff's claim is and the

26 grounds upon which it rests.  <u>See</u> <u>Conley v. Gibson</u>, 355 U.S. 41,

27 47 (1957).  "[D]ismissal for a violation under Rule 8(a)(2) is

28 usually confined to instances in which the complaint is 'so

1  verbose, confused or redundant that its true substance, if any,

2  is well disguised.'" Gillibeau, 417 F.2d at 431 (citing Corcoran

3  v. Yorty, 347 F.2d 222, 223 (9th Cir. 1965)).

4  **D.   Rule 10(a)**

5  _____The Federal Rules of Civil Procedure provide, "[i]n the

6  complaint, the title of the action shall include the names of all

7  the parties." Fed. R. Civ. P. 10(a).  "The rule serves to

8  apprise the parties of their opponents, and it protects the

9  public's legitimate interest in knowing all the facts and events

10 surrounding court proceedings." Doe v. Rostker, 89 F.R.D. 158,

11 160 (D. Cal. 1981).  If a party is unknown at the time a

12 complaint is filed, federal courts typically will allow the use

13 of a fictitious name in the caption so long as it appears that

14 the plaintiff will be able to obtain the true name through the

15 discovery process. Gillespie v. Civiletti, 629 F.2d 637, 642

16 (9th Cir. 1980).

17                          **ANALYSIS**

18 **A.   Jurisdiction and Justiciability**

19      **1.   Justiciability**

20      Defendants raise a number of arguments relating to the

21 court's jurisdiction over plaintiff's claims, including issues

22 relating to standing, the political question doctrine, and

23 mootness.  These arguments are off-point because they address

24 claims not before the court.

25      Defendants repeatedly argue that plaintiff's "real complaint

26 is that the District did not adopt his QSEP." (Defs.' Reply,

27 filed Sept. 16, 2005, at 5).  This so-called "real complaint" was

28 never filed by plaintiff.  On defendants' motion to dismiss, the

                              9

1  court may only address plaintiff's claims, not defendants'

2  claims.  Here, plaintiff claims that: (1) defendants are denying

3  him the opportunity to speak at various types of school district

4  meetings, thus violating his rights guaranteed by the First and

5  Fourteenth Amendments; (2) plaintiff was treated differently and

6  unfairly because of his religious beliefs in violation of the

7  Free Speech Clause, his right to petition the government, the

8  Establishment Clause, the Equal Protection Clause, and his rights

9  to procedural due process; and (3) his constitutional rights will

10  continue to be violated by defendants based upon their past

11  pattern and practice.  Plaintiff's TAC does not seek an order by

12  this court requiring the adoption of the QSEP in the school

13  curriculum.  Defendants' various and extended arguments

14  addressing this non-existent allegation are not germane to

15  defendants' motion and will not be considered by the court.

16       In addition, defendants argue the *merits* of plaintiff's

17  claims, which seek relief for the above alleged violations of his

18  Constitutional rights.  On a Rule 12(b) motion to dismiss, the

19  court may only examine the *allegations* of the complaint.  The

20  court may not look at the merits of plaintiff's claims or

21  defendants' factual defenses.  This does not mean that defendants

22  may not ultimately prevail on a motion for summary judgment.  It

23  means that, as a result of defendants' motion to dismiss, the

24  court can only consider the allegations on the face of the

25  complaint, viewed in a light most favorable to the plaintiff.

26  See Fed. R. Civ. Proc. 12(b)(6).  Therefore, the court will not

27  address those arguments of defendants more properly made on a

28  motion for summary judgment.  See Fed. R. Civ. Proc. 56.

1         **2.   Eleventh Amendment Immunity**

2          Plaintiff's TAC alleges claims against the District and

3     against all individual defendants in their official capacities.[3]

4     Defendants argue that they are entitled to Eleventh Amendment

5     sovereign immunity, and therefore, this court does not have

6     jurisdiction over plaintiff's claims.

7          Defendants argue that plaintiff's claims against the

8     District should be dismissed because the Eleventh Amendment bars

9     a federal court from hearing claims by a citizen against

10    dependant instrumentalities of the state.  Cerrato v. San

11    Francisco Comm. College Dist., 26 F.3d 968, 972 (9th Cir. 1994).

12    The Ninth Circuit has established that California school

13    districts are state agencies.  See Belanger v. Madera Unified

14    School District, 963 F.2d 248, 251 (9th Cir. 1992) (holding that

15    a school district was a state agency for purposes of the Eleventh

16    Amendment because a judgment against the school district would be

17    satisfied out of state funds and because the district performed

18    central government functions).  Under the Eleventh Amendment,

19    agencies of the state are immune from private damage actions or

20    suits for injunctive relief brought in federal court.  Mitchell

21    v. Los Angeles Comm. College Dist., 861 F.2d 198, 201 (9th Cir.

22    1988) (citing Pennhurst State Sch & Hosp. v. Halderman, 465 U.S.

23    89, 100 (1984) (Eleventh Amendment proscribes suit against state

24    _____

25         [3]   Plaintiff designated that the individual defendants
      were being sued "in their official capacities" in the TAC.
26    Plaintiff failed to request and receive leave to amend the SAC to
      properly change the caption.  As such, the changes must be
27    stricken.  Nevertheless, in assessing the TAC,  the court will
      consider this amendment as a demonstration of plaintiff's
28    intention to sue the individual defendants only in their official
      capacities.

1   agencies "regardless of the nature of the relief sought").  Thus,

2   because the District is a state agency, it possesses Eleventh

3   Amendment immunity from plaintiff's claims for damages and for

4   injunctive relief.  Id.  Defendants' motion to dismiss

5   plaintiff's claims against the District are GRANTED.

6       Defendants also argue that the individual defendants are

7   entitled to immunity under the Eleventh Amendment.  Generally, a

8   claim asserted against an officer of the state, acting in his/her

9   official capacity is, as a matter of law, asserted against the

10  State of California itself, Brandon v. Holt, 469 U.S. 464, 471-72

11  (1985), and therefore is generally barred on Eleventh Amendment

12  immunity grounds.  See Dittman v. California, 191 F.3d 1020, 1026

13  (9th Cir. 1999) ("The Eleventh Amendment bars actions for damages

14  against state officials who are sued in their official capacities

15  in federal court.") (citations omitted).  However, "[i]t is well

16  established that the Eleventh Amendment does not bar a federal

17  court from granting prospective injunctive relief against an

18  officer of the state who acts outside the bounds of his

19  authority."  Cerrato, 26 F.3d at 973; Ex parte Young, 209 U.S.

20  123.  To the extent that plaintiff seeks declaratory and

21  injunctive relief under federal law against the individual

22  defendants, defendants' motion to dismiss is DENIED.

23      This exception to the general rule granting immunity does

24  not apply when a plaintiff alleges that a state official has

25  violated a state law.  Pennhurst, 465 U.S. at 105-06 ("[I]t is

26  difficult to think of a greater intrusion on state sovereignty

27  than when a federal court instructs state officials on how to

28  conform their conduct to state law.").  "Ex parte Young allows

12

1  prospective relief against state officers only to vindicate

2  rights under federal law." Spoklie v. Montana, 411 F.3d 1051,

3  1059 (9th Cir. 2005).  To the extent that plaintiff's TAC alleges

4  violations of state law by the individual defendants in their

5  official capacity, defendants' motion is GRANTED.

6   Plaintiff's TAC alleges violations of federal and state

7  constitutional law as well as a state taxpayer claim for

8  wasted/illegally expended municipal funds.  Plaintiff seeks

9  declaratory and injunctive relief, nominal damages, and

10  attorney's fees and costs.  Under 42 U.S.C. § 1988, one who

11  prevails in a § 1983 action is entitled to recover attorney's

12  fees as costs, not as damages.  See Williams v. Vidmar, 367 F.

13  Supp. 2d 1265, 1277 (N.D. Cal. 2005).  Thus, plaintiff's only

14  claims for monetary damages are in the form of his request for

15  nominal damages in the amount of $100.  Because a suit for

16  damages against a state official is barred by the Eleventh

17  Amendment, defendant's motion to dismiss plaintiff's claim for

18  nominal damages is GRANTED.

19    **3. Exhaustion of Administrative Remedies**

20   Defendants argue that this case should be dismissed because

21  plaintiff has failed to exhaust his administrative remedies.

22  "[E]xhaustion of state administrative remedies should not be

23  required as a prerequisite to bringing an action pursuant to §

24  1983." Patsy v. Bd. of Regents, 457 U.S. 496, 516 (1982)

25  (*superceded* on other grounds); See also Porter v. Nussle, 534

26  U.S. 516, 523 (2002)(*superceded* on other grounds).  Accordingly,

27  defendants' motion is DENIED.

28  /////

13

1      **B.     Immunity**

2      **1.    Federal Qualified Immunity**

3            Defendants argue that plaintiffs complaint should be

4      dismissed because they are entitled to federal qualified immunity

5      under § 1983.  "Qualified immunity is an affirmative defense to

6      damage liability; it does not bar actions for declaratory or

7      injunctive relief."  Amer. Fire, Theft, & Collision Managers,

8      Inc. v. Gillespie, 932 F.2d 816, 818 (9th Cir. 1991) (citations

9      omitted).  Plaintiff brings this suit for declaratory and

10     injunctive relief, nominal damages, and for attorneys' fees and

11     costs.  Therefore, to the extent that plaintiffs assert claims

12     for equitable relief, defendants are not protected by federal

13     qualified immunity.  See Hoohuli v. Ariyoshi, 741 F.2d 1169 (9th

14     Cir. 1984) ("[I]mmunity from injunctive relief is generally

15     without foundation. . . . The availability of such injunctive

16     relief is necessary to permit the vindication of important

17     federal rights.").  Defendants' motion to dismiss based upon

18     federal qualified immunity is DENIED.

19     **2.    State Law Immunity**

20           Defendants argue that they are immune based upon state law

21     absolute or discretionary immunity.  State statutory immunity

22     provisions do not apply to federal civil rights actions.

23     Guillory v. Orange County, 731 F.2d 1379, 1382 (9th Cir. 1984).

24     The Ninth Circuit explained, "To construe a federal statute to

25     allow a state immunity defense 'to have controlling effect would

26     transmute a basic guarantee into an illusory promise,' which the

27     supremacy clause does not allow."  Id. (citations omitted).

28     Therefore, state law immunity provisions will not guard

1  defendants from plaintiff's § 1983 claims for relief and

2  defendants' motion to dismiss based upon state law immunity is

3  DENIED.[4]

4  **C.   Plaintiff's Alleged Failure to State a § 1983 Claim**

5       Turning to the sufficiency of plaintiff's § 1983

6  allegations, defendants contend that plaintiff fails to state

7  sufficient allegations.  To state a claim under § 1983,

8  plaintiffs must plead that (1) defendants acted under color of

9  law, and (2) defendants deprived plaintiff of rights secured by

10 the Constitution or federal statutes.  Gibson v. U.S., 781 F.2d

11 1334, 1338 (9th Cir. 1986).

12      **1.   Plaintiff's Free Speech Rights**

13      Plaintiff alleges that his First Amendment rights were

14 violated because defendants refused to place his QSEP on the

15 agenda.  (TAC ¶¶ 17-28).  Defendants argue and plaintiff admits

16 that he was able to place the QSEP on the agenda and discuss it

17 at a school board meeting.  (Id. ¶ 25).  However, plaintiff

18 alleges that he was unable to place the QSEP on the agenda for

19 twelve meetings during the 2003-2004 school year because

20 defendants intended to discriminate against him based on his

21 religious beliefs and affiliations.  (Id. ¶ 28).  Plaintiff also

22 alleges that, based upon defendants' past conduct, he is likely

23 to be denied his rights to place the QSEP on the meeting agenda

24 in the future.  (Id.)

25

26      [4]   Because plaintiff's state law claims against the
   individual defendants are barred by the Eleventh Amendment, this
27 court does not address defendants' arguments regarding the
   applicability of state law discretionary or absolute immunity to
28 plaintiff's state law claims.

1    Because this case concerns the government's ability to limit
2    private expression in a public context, it is governed by the
3    public forum doctrine.  <u>Levanthal v. Vista Unified Sch. Dist.</u>,
4    973 F. Supp. 951, 956 (S.D. Cal. 1997).  The Supreme Court has
5    identified thee distinct types of fora: (1) traditional public
6    fora, "places which by long tradition or by government fiat have
7    been devoted to assembly and debate;" (2) limited public fora,
8    places generally open to the public for expressive activity,
9    "even if [the government] was not required to create the forum in
10   the first place;" and (3) nonpublic fora, "public property which
11   is not by tradition or designation a forum for public
12   communication."  <u>Perry Education Assn. v. Perry Local Educators'</u>
13   <u>Assn.</u>, 460 U.S. 37, 45-46 (1983).  Under this doctrine, the
14   state's ability to regulate speech depends on the nature of the
15   forum.  <u>See</u> <u>id.</u>

16       The State of California has designated certain public
17   property for use as public fora.  Under the Brown Act and the
18   California Education Code, the California Legislature has
19   designated school board meetings as limited public fora, i.e.
20   fora open to the public in general, but limited to comments
21   related to the school board's subject matter.  Cal. Gov. Code §
22   54954.3 (West 2005); Cal. Educ. Code § 35145.5 (West 2005); <u>see</u>
23   <u>Leventhal</u>, 973 F. Supp at 957; <u>Baca v. Moreno Valley Unified Sch.</u>
24   <u>Dist.</u>, 936 F. Supp. 719, 729 (C.D. Cal. 1996).  The government
25   may impose content neutral regulations on speech in limited
26   public fora if they are reasonable time, place, or manner
27   restrictions.  <u>See</u> <u>Perry</u>, 460 U.S. at 46.  The government may
28   /////

1   only impose content based prohibition is they are "narrowly drawn

2   to effectuate a compelling state interest."   Id.

3       Plaintiff alleges that on numerous occasions he was

4   restricted from placing the QSEP on the agenda and presenting the

5   QSEP at open school board meetings because of his viewpoint.

6   "The public's right to speak at open school board meetings

7   includes the right to place school matters on the agenda of those

8   meetings." Leventhal, 973 F. Supp. at 962 n. 7 (citing Cal.

9   Educ. Code § 35145.5).  Because plaintiff has alleged that

10  defendants have restricted his speech in a limited public forum

11  on the basis of it content, plaintiff has sufficiently pled a

12  claim for violation of his First Amendment Right to free speech.[5]

13  Defendants' motion is DENIED.

14      **2.   Plaintiff's Petition Rights**

15      Plaintiff alleges that defendants deprived him of his

16  constitutional rights to petition and instruct the government.

17  The First Amendment protects citizens' rights to petition the

18  government for redress of grievances.  See Smith v. Arkansas

19  State Highway Employees, Local 1315, 441 U.S. 463, 464 (1979);

20  Evers v. County of Custer, 745 F.2d 1196, 1204 (9th Cir. 1984).

21  "[T]he right to petition extends to all departments of the

22  government, including the executive department, the legislature,

23  agencies, and the courts."   White v. Lee, 227 F.3d 1214, 1232

24  /////

25

26      [5]   To the extent that defendants argue that there is a
    sufficient justification for restricting plaintiff's speech, they
27  may later assert such a compelling government interest.  However,
    the assertion or sufficiency of such a government interest cannot
28  be evaluated at this stage of the litigation.

1  (9th Cir. 2000).  However, this right to petition is not

2  absolute.

> [The] right to petition government afforded by the
> First Amendment does not include the absolute right to
> speak in person to officials.  Where written
> communications are considered by government officials,
> denial of a hearing does not infringe upon the right to
> petition.  The right to petition government does not
> create in the government a corresponding duty to act.

7  Prestopnik v. Whelan, 253 F. Supp. 2d 369, 375 (N.D.N.Y. 2003)

8  (no violation where a teacher's attorney was given the

9  opportunity to submit her complaint in writing); see Walker-

10 Serrano v. Leonard, 168 F. Supp. 2d 332, 347 (M.D. Pa. 2001) (no

11 violation where plaintiff elementary school student was not

12 allowed to pass petitions to students but was afforded other

13 avenues).

14      Plaintiff alleges that defendants infringed upon his First

15 Amendment right to petition in denying him the opportunity to

16 place items on the school board agenda for discussion.  The right

17 to petition does not require that plaintiff be given an

18 opportunity to speak publicly about his petition nor that the

19 government act upon his petition.  See Prestopnik v. Whelan, 253

20 F. Supp. 2d at 374; Walker-Serrano, 168 F. Supp. 2d at 347.

21 Plaintiff sent numerous letters to the board regarding the QSEP.

22 (Id. ¶¶ 17, 19, 22, 24, 28).  Defendants responded to these

23 letters.  (Id. ¶¶ 18, 20, 23, 25).  Moreover, on May 4, 2004,

24 plaintiff had the opportunity to publicly debate the QSEP.  (Id.

25 ¶ 25.)  While plaintiff alleges that the Board did not vote on

26 the adoption of the QSEP, that inaction does not violate

27 plaintiff's constitutional rights.  "[T]he First Amendment does

28 /////

18

1   not impose any affirmative obligation on the government to

2   listen, [or] to respond."   <u>Smith</u>, 441 U.S. at 465.

3       Plaintiff alleges that he made written requests and

4   complaints to defendants, that he discussed the situation in

5   person with individual defendants, and that he publicly presented

6   the QSEP at a board meeting.  The facts alleged by plaintiff

7   demonstrate that there were opportunities to petition the

8   government, albeit not in the forum that plaintiff desired.

9   Therefore, plaintiff's complaint fails to state a claim for a

10  violation of his right to petition at defendant's school board

11  meetings.

12      Plaintiff further claims that his right to petition was

13  violated when he was not permitted to discuss the QSEP at CIT

14  meetings.  (TAC ¶ 29.)  Specifically, Severson told plaintiff and

15  others that they would not be permitted to discuss the QSEP at a

16  CIT meeting.  (<u>Id.</u> ¶ 36.)  However, Severson offered to meet with

17  plaintiff personally to discuss the QSEP.  (<u>Id.</u> ¶ 34.)  Because

18  plaintiff alleges facts that demonstrate that he was given an

19  avenue to petition the government, his constitutional right was

20  not violated.  <u>See</u> <u>Walker-Serrano</u>, 168 F. Supp. 2d at 347.

21      Under <u>Doe v. United States</u>, 58 F.3d 494, 497 (9th Cir.

22  1995), in dismissing for failure to state a claim under Rule

23  12(b)(6) "a district court should grant leave to amend even if no

24  request to amend the pleading was made, unless it determines that

25  the pleading could not possibly be cured by the allegation of

26  other facts."  Since the court has found that plaintiff's own

27  allegations demonstrate that he was given avenues to petition the

28  government, he could only cure this pleading by denying his own

allegations.   Thus, Defendant's motion is GRANTED without leave to amend.

### 3.   Plaintiff's Free Exercise and Establishment Clause Rights[6]

Plaintiff asserts that defendants' restriction of his participation in meetings, failure to give full review of his QSEP, and failure to remedy violations of his constitutional rights violate the Establishment Clause of the United States Constitution.   The Establishment Clause provides: "Congress shall make no law respecting an establishment of religion . . . ." U.S. Const. amend. I, cl. 1.   The prohibition of the Establishment Clause applies to state governments through the Fourteenth Amendment.   Everson v. Board of Education, 330 U.S. 1, 8 (1947).   According to the Supreme Court,

> the Establishment Clause [has come] to mean
> that government may not promote or affiliate
> itself with any religious doctrine or
> organization, may not discriminate among
> persons on the basis of their religious
> beliefs and practices, may not delegate a

---

[6]   Plaintiff brings a claim for relief under § 1983 for violations of his rights under the Establishment and Free Exercise clauses of the First Amendment.   It is unclear from the face of the complaint whether plaintiff intended to bring claims under both of these clauses separately.   Moreover, in his opposition papers, plaintiff incorporates his argument relating to the Establishment Clause in his argument relating to the Free Exercise Clause and alleges the same violations as under his Establishment Clause claim.   Specifically, plaintiff alleges that defendants do not allow Christian citizens to participate in public debates and public policy-making to the same extent as non-Christians.   Because this court cannot discern how these violations prevent plaintiff from exercising his religion, the court will address these violations under only the Establishment Clause.   See Braunfeld v. Brown, 366 U.S. 599 (1961) (finding no Free Exercise violation where the disputed legislation did not criminalize the holding of any religious belief or opinion, did not force anyone to embrace any religious belief, or say or believe anything in conflict with his religious tenets); see also Johnson v. Robinson, 415 U.S. 361, 383-86 (1974).

1          governmental power to a religious
2          institution, and may not involve itself too
           deeply in such an institution's affairs.

3  County of Allegheny v. ACLU, 492 U.S. 573, 590-91 (1989)

4  (footnotes omitted), quoted in Alvarado v. City of San Jose, 94

5  F.3d 1223, 1231 (9th Cir. 1996).

6      As decreed by the Supreme Court, and followed in the Ninth

7  Circuit,[7] claims brought under the Establishment Clause are

8  analyzed under the three-part "Lemon Test."  See Lemon v.

9  Kurtzman, 403 U.S. 602 (1971).  Under the Lemon analysis, a

10 statute or practice which touches upon religion must (1) have a

11 secular purpose; (2) must neither advance nor inhibit religion in

12 its principal or primary effect; and (3) must not foster an

13 excessive entanglement with religion.  County of Allegheny, 492

14 U.S. at 592; see Lemon, 403 U.S. at 612-13.

15     Defendants' argument under the establishment clause fails to

16 address any of plaintiff's allegations in his claim for relief.

17 Instead, defendants assert, generally, that they had discretion

18 to reject plaintiff's QSEP and maintain the current science

19 curriculum.  Plaintiff does not claim that defendants did not

20 have such discretion.  Rather, plaintiff alleges that defendants

21 violated his First Amendment constitutional rights by exhibiting

22 hostility towards him and his beliefs.  (TAC ¶¶ 16, 28, 36-37,

23 43-47).  Plaintiff alleges that defendants' actions were

24 motivated by "religious animus" and constituted government

25 disapproval of Christian religious beliefs.  (Id.)

26

27     [7]  See Brown v. Woodland Jt. Unif. Sch. Dist., 27 F.3d 1373,
   1378 (9th Cir. 1994);  Kreisner v. San Diego, 1 F.3d 775, 780
28 (9th Cir. 1993).

1    "In applying the purpose test, it is appropriate to ask

2   whether government's actual purpose is to endorse or disapprove

3   of religion."  <u>Wallace v. Jaffree</u>, 472 U.S. 38, 56 (1985).  In

4   this case, the answer to this inquiry is dispositive and the

5   court need not address the second and third elements of the <u>Lemon</u>

6   test.  <u>See</u> <u>id.</u>; <u>Lynch v. Donnelly</u>, 465 U.S. 668, 690 (1984)

7   (O'Connor, concurring) ("The purpose prong of the <u>Lemon</u> test

8   requires that a government activity have a secular purpose.").

9   Plaintiff has alleged that defendants <u>inter alia</u> restricted his

10  participation at meetings, did not accord his QSEP appropriate

11  review, and refused to remedy the denial of his constitutional

12  rights based on their "religious animus."  (TAC ¶¶ 16, 28, 36-37,

13  43-47).  On a motion to dismiss, the court may only evaluate the

14  allegations on the face of the complaint.  <u>See</u> Fed. R. Civ. Proc.

15  12(b).  Reading the complaint in the light most favorable to the

16  plaintiff and drawing all reasonable inferences therefrom,

17  plaintiff has sufficiently alleged that the primary purpose of

18  the defendant's actions was to disapprove of plaintiff's actual

19  or perceived religious beliefs.  Defendants' *alleged* actions do

20  not pass the secular purpose test.  Thus, plaintiff has

21  sufficiently pled a violation of his First Amendment rights under

22  the Establishment Clause.  Defendants' motion is DENIED.

23      **4.   Plaintiff's Equal Protection Rights**

24      Plaintiff alleges a claim for relief against defendants

25  under § 1983 for violations of the Equal Protection Clause.  (<u>Id.</u>

26  ¶ 71).  Defendants allege that plaintiff has failed to properly

27  allege any "suspect classifications" necessary for stating a

28  claim for violation of his equal protection rights.

1    The Equal Protection Clause of the Fourteenth Amendment
2  provides that no State shall "deny to any person within its
3  jurisdiction the equal protection of the laws." U.S. Const.
4  Amdt. 14, § 1. This is "essentially a direction that all persons
5  similarly situated should be treated alike." City of Cleburne v.
6  Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985) (citing
7  Plyler v. Doe, 457 U.S. 202, 216 (1982)). "The guarantee of
8  equal protection is not a source of substantive rights or
9  liberties, but rather a right to be free from discrimination in
10  statutory classifications and other governmental activity."
11  Williams, 367 F. Supp. 2d at 1270 (citing Harris v. McRae, 448
12  U.S. 297, 322 (1980)). "[D]iscrimination cannot exist in a
13  vacuum; it can only be found in the unequal treatment of people
14  in similar circumstances." Id. (quoting Attorney General v.
15  Irish People, Inc., 684 F.2d 928, 946 (D.C. Cir. 1982)). Under
16  the liberal notice-pleading standard, plaintiff need only allege
17  a broadly identified class of similarly situated persons for an
18  equal protections claim. See Williams, 367 F. Supp. 2d at 1271
19  (finding a broadly identified class was sufficient to put
20  defendants on notice where plaintiff sufficiently alleged that he
21  was treated differently from other teachers because he is an
22  "avowed Christian").

23    Again, the court must accept as true all factual allegations
24  made by plaintiff on a motion to dismiss. Plaintiff states that
25  he is a Christian, whom defendants pejoratively refer to as a
26  "right-wing evangelical Christian fundamentalist." (TAC ¶ 16).
27  He alleges that defendants have restricted him and members of the
28  public from exercising their rights under the First and

23

Fourteenth Amendment because of "an intent to discriminate against Caldwell and other citizens on the basis of their viewpoint and/or their religious beliefs and affiliations." (Id. ¶¶ 16, 28, 37). Plaintiff further alleges that "defendants are hostile to Caldwell's actual and perceived religious beliefs and affiliations and . . . have been motivated and continue to be motivated by such antireligious hostility in depriving Caldwell of constitutional rights." (Id. ¶ 28). Plaintiff claims that the defendants' "pattern and practice" violate the Equal Protection Clause.

Plaintiff has alleged that he is treated differently from other members of the community based upon his actual or perceived religious beliefs. In the context of the complaint, plaintiff's allegations identify the class of similarly situated persons as those parents and members of the community who participate in school board meetings, the curriculum instruction team, and challenges to the instructional materials. Under the liberal notice-pleading standard, these allegations are sufficient. See Williams, 367 F. Supp. 2d at 1271. Defendants' motion is DENIED.

### 5.  Plaintiff's Procedural Due Process Rights

Plaintiff further alleges that defendants have subjected him to a deprivation of his rights to procedural due process under the Fourteenth Amendment. Specifically, plaintiff alleges that defendants, "motivated by their false presumptions about his perceived religious and political viewpoints," engaged in a "pattern and practice of preventing plaintiff from exercising his constitutional rights. (TAC ¶ 16). Plaintiff argues that defendants acted upon an unwritten, unconstitutionally vague

24

1    policy in deciding what matters would be placed on the meeting

2    agendas.  (See id. ¶ 49).

3         To allege a procedural due process claim on the basis of a

4    vague regulation, a plaintiff must first allege a deprivation of

5    a constitutionally protected interest, and second, allege that

6    the deprivation was achieved by means of a constitutionally vague

7    policy or procedure.  Zinerman v. Burch, 494 U.S. 113, 125

8    (1990); Williams, 367 F. Supp. 2d at 1274.  As demonstrated

9    above, plaintiff has sufficiently alleged deprivations of his

10   First Amendment rights in his complaint.  Plaintiff alleges that

11   all of the adverse conduct by defendants was performed pursuant

12   to "established policies, practices, or customs."  (TAC ¶ 49).

13   Again, under a liberal notice-pleading standard, plaintiff's

14   allegations are sufficient because they apprise defendants of the

15   basis for the claims asserted against them.  Taking plaintiff's

16   allegations as true and deriving all reasonable inferences

17   therefrom, plaintiff has alleged that the deprivation of his

18   constitutional rights were achieved by unwritten policies and

19   practices that are unconstitutionally vague on their face or as

20   applied to plaintiff.  Defendants motion is DENIED.

21   **D.   Procedural Defects**

22        Defendants allege procedural defects with plaintiff's TAC

23   under Rule 8(a).  Rule 8(a) requires the complaint to provide "a

24   short and plain statement of the claim showing that the pleader

25   is entitled to relief."  Plaintiff has amended his complaint to

26   sufficiently allege his claims for relief as well as the factual

27   basis for those claims.  Therefore, the TAC meets the

28   requirements of Rule 8(a).  Defendant's motion is thus DENIED.

1    Defendants also allege that plaintiff's TAC violates Rule

2    10(a).  Defendants point to plaintiff's addition of the 10 "Doe

3    defendants" as well as the addition of the "official capacity"

4    designation following the names of the individual defendants.

5    Plaintiff did not previously seek leave to amend his complaint to

6    add the new defendants or the new designation.  Because plaintiff

7    was not granted leave to amend, the 10 Doe defendants as well as

8    the "official capacity" designations of the individual defendants

9    are STRICKEN.

10   **E.   Leave to Amend**

11   Pursuant to Rule 15(a), "leave [to amend] is to be freely

12   given when justice so requires."  "[L]eave to amend should be

13   granted unless amendment would cause prejudice to the opposing

14   party, is sought in bad faith, is futile, or creates undue

15   delay."  Martinez v. Newport Beach, 125 F.3d 777, 785 (9th Cir.

16   1997).  Though the court has stricken plaintiff's additions to

17   the caption because plaintiff failed to properly seek leave to

18   amend, plaintiff's TAC does allege claims against the 10 Doe

19   defendants as well as the individual defendants "in their

20   official capacity."  Therefore, plaintiff is granted leave to

21   amend the third amended complaint for the limited purpose of

22   amending the caption to include the 10 Doe defendants and the

23   "official capacity" designation following the names of the

24   individual defendants.

25   **F.   Request for Sanctions, Attorneys' Fees, and Costs**

26   Defendants request sanctions, attorneys' fees, and costs,

27   alleging that the TAC is "totally without merit, frivolous, and

28   in violation of the Federal Rules of Civil Procedure."  (Def.'s

1  Mot. at 47).  To the contrary, plaintiff's TAC has alleged
2  colorable claims under § 1983.  Therefore, defendants' request is
3  DENIED.

**CONCLUSION**

4
5      1.  Defendants' motion to dismiss plaintiff's claims against
6  Roseville Joint Union High School District is GRANTED with
7  prejudice because such claims are barred by the Eleventh
8  Amendment.
9      2.  Defendants' motion to dismiss plaintiff's state law
10 claims against all individual defendants is GRANTED with
11 prejudice because such claims are barred by the Eleventh
12 Amendment.
13     3.  Defendant's motion to dismiss plaintiff's claims for
14 nominal damages is GRANTED with prejudice because such claims are
15 barred by the Eleventh Amendment.
16     4.  Defendant's motion to dismiss plaintiff's § 1983 claims
17 is:
18         a.   DENIED with respect to plaintiff's First Amendment
19              free speech claims;
20         b.   DENIED with respect to plaintiff's Free Exercise
21              and Establishment Clause claims;
22         c.   DENIED with respect to plaintiff's Equal
23              Protection Clause claims;
24         d.   DENIED with respect to plaintiff's procedural due
25              process claims;
26         e.   GRANTED with prejudice with respect to plaintiff's
27              First Amendment right to petition claims.
28 /////

27

1    5.  Defendant's request for sanctions, attorneys' fees, and

2  costs is DENIED.

3    Plaintiff is granted twenty (20) days from the date of this

4  order to file a fourth amended complaint in accordance with this

5  order.  Pursuant to this order, plaintiff's fourth amended

6  complaint may only reflect changes to the caption of the

7  complaint to include the 10 Doe defendants and the "official

8  capacity" designation following the names of the individual

9  defendants.  Defendants are granted thirty (30) days from the

10  date of service of plaintiff's fourth amended complaint to file a

11  response thereto.

12    IT IS SO ORDERED.

13  DATED: October 25, 2005

14

15                         /s/ Frank C. Damrell Jr.
                           FRANK C. DAMRELL, Jr.
16                         UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28